<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS DOBBS, | Civil Action No. 2:11-cv-05166-SDW |
| Plaintiff, | |
| v. | |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
| Defendant. | February 19, 2013 |

**WIGENTON**, District Judge**.**

Before this court is Plaintiff Thomas Dobbs's ("Plaintiff" or "Mr. Dobbs") appeal of the final administrative decision of the Commissioner of Social Security ("Defendant" or "Commissioner"), with respect to Administrative Law Judge Leonard Olarsch's ("ALJ") denial of Mr. Dobbs's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  This court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(g). Venue is proper under 28 U.S.C. § 1391(b).  For the reasons stated herein, this Court **AFFIRMS** the Commissioner's decision.

I.  **FACTS AND PROCEDURAL HISTORY**

On September 11, 2007, Mr. Dobbs "filed a Title II application for a period of disability and disability insurance benefits." (R. at 16.) Mr. Dobbs also filed a Title XVI application for supplemental security income on August 29, 2007. (*See id.*) In both applications, Mr. Dobbs alleged disability beginning on August 29, 2007. (*See id.*) These claims were denied initially on March 13, 2008 and upon reconsideration on August 21, 2008. (*See id*.) Mr. Dobbs filed a written request for a hearing on September 26, 2008. (*See id.*) Mr. Dobbs appeared and testified at a hearing held on December 3, 2009 in Newark, NJ before the ALJ. (*See id.*) Post hearing, the ALJ held the record open, and Mr. Dobbs's attorney submitted a new treatment record consisting of a neurological examination conducted on April 21, 2010 and new UMDNJ emergency room records from an examination conducted on April 29, 2010. (*See* R. at 405, 420.) The ALJ ultimately found that Mr. Dobbs was "not disabled," and therefore able to find a job in the national economy. (*See id*.) On July 19, 2011, the Commissioner adopted the ALJ's decision. (*See id.* at 1.) Mr. Dobbs seeks reversal of the Commissioner's decision.

Mr. Dobbs claims the Commissioner's decision was not based on substantial evidence as required under 42 U.S.C. § 405(g). (*See id.*) First, Mr. Dobbs argues that the Commissioner failed to sustain his burden at step five of the evaluation process, because the Commissioner's determination that Mr. Dobbs is able to perform "light" work constituted an error that cannot be sustained. (*See id.* at 10.) Second, Mr. Dobbs claims the Commissioner erred as a matter of law in applying the medical vocational guidelines ("Grids"), because: (1) no vocational experts testified at Mr. Dobbs's hearing, (2) the Commissioner did not specify how the non-exertional limitations affected Mr. Dobbs's job base, and (3) Mr. Dobbs was not given a chance to address the Commissioner's reliance on SSR's. (*See id.* at 13, 14.)

The Commissioner requests that his final decision be upheld because it was supported by substantial evidence. (*See* Def.'s Br. at 6.) First, the Commissioner asserts that the ALJ properly: (1) evaluated Dr. Fernando's medical opinion, (2) resolved inconsistencies in the evidence, and (3) limited Mr. Dobbs to a more restrictive RFC than that suggested by Dr. Fernando. (*See id.* at 10-11.) Second, the Commissioner argues that the ALJ properly considered the subjective testimony of Mr. Dobbs. (*See id.* at 12.) Last, the Commissioner contends that the ALJ followed Third Circuit precedent in his reliance on SSR. (*See id.* at 14.)

## II.   LEGAL STANDARDS

In social security appeals, the District Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the Commissioner's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*,

3

383 U.S. 607, 620 (1966). In essence, "The Commissioner's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D.Pa. 1976)). However, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

## III.  DISCUSSION

### a.  *The SSDI Test*

An individual is under the Act if he or she is unable to "engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy . . . ." § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id*.

4

The Social Security Administration has established a five-step sequential evaluation process for deciding whether an individual is disabled. 20 C.F.R. §§ 401.1520(B) and 416.920(b). A determination of non-disability at steps one, two, four, or five in the five-step analysis ends the inquiry. *See* 20 C.F.R. § 416.920. A determination of disability at steps three and five results in a finding of disability. *See id.* Contrarily, if an affirmative answer is determined at steps one, two, or four, the SSA proceeds to the next step in the analysis. *See id.*

      i. <u>Step One</u>

At step one, the Commissioner must determine whether the claimant is engaging in SGA. *See* 20 C.F.R. § 416.920(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for profit, whether or not profit is realized. *See* 20 C.F.R. § 416.72(b). Generally, if a person has earnings from employment or self-employment above a specific threshold listed in the regulations, he is presumed to have engaged in SGA. 20 C.F.R. §§ 404.1574, 404.1575, 416.974, and 416.975. If an individual engages in SGA, then he is not disabled regardless of the severity of his physical or mental impairments. *See id.* If the individual is not engaging in SGA, then the Commissioner proceeds to the next step. *See id.*

      ii. <u>Step Two</u>

At step two, the Commissioner must determine whether the claimant has a medically determinable severe impairment or a severe combination of impairments. *See* 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. § 416.921. An impairment or combination of impairments is not severe when medical and other evidence

establish only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. *See id*. If the claimant does not have a severe impairment or severe combination of impairments, then he is not disabled. *See* 20 C.F.R. § 416.972(c). If the claimant has a severe impairment or severe combination of impairments, then the analysis proceeds to step three. *See id.*

### iii. Step Three

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed in 20 C.F.R. § Part 404, Subpart P Appendix 1. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, then the claimant is disabled. *See* 20 C.F.R. § 416.920(d). If the claimant does not, then the analysis proceeds to the next step. *See id.*

After step three, but before considering step four, the Commissioner must first determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 416.920(e); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* 20 C.F.R. § 404.1545. In making this determination, the Commissioner must consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. § 416.920(e), 416.945. As trier of fact, the Commissioner has discretion to weigh all the evidence, and resolve material conflicts. 20 C.F.R. § 404.1527. Thus, a RFC must include a resolution of any inconsistent views in the evidence. *See* SSR 96-8. This requires the Commissioner to explain why a particular opinion was not adopted, when his assessment conflicts with an opinion from a medical source. SSR 96-8.

        iv.    <u>Step Four</u>

At step four, the Commissioner must determine whether the claimant has the RFC to perform the requirements of his past relevant work.  *See* 20 C.F.R. § 416.920(f).  "Past relevant work" means work performed within fifteen years prior to the date that the disability must be established.  *See* 20 C.F.R. § 416.960(b)(1).  If the claimant has the RFC to perform his past relevant work, then the claimant is not disabled. *See* 20 C.F.R. § 416.920(f).  If the claimant is unable to do any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth step. *See id.*

        v.    <u>Step Five</u>

At step five, the Commissioner must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience.  *See* 20 C.F.R. § 416.920(g).  The claimant bears the burden of persuasion in the first four steps.  *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 763 (3d Cir. 2009).  However, if the claimant establishes in step four that his impairment prevents him from performing any of his past work, then at step five the burden shifts to the Social Security Administration to determine whether the claimant is capable of performing alternative, substantial, gainful, activity present in the national economy.  *See* 20 C.F.R. § 416.920(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

    b.    *The ALJ's Findings*

In his analysis, the ALJ applied the five-step sequential evaluation process laid out by the Social Security Administration under the Social Security Act ("Act") to determine whether Mr. Dobbs is disabled.  (*See* R. at 17); 20 C.F.R. § 404.1520(a).  After ruling that Mr. Dobbs met the insured status conditions of the Act through December 31, 2009, the ALJ found, at step one, that Mr. Dobbs had not engaged in SGA since August 29, 2007.  (*See id.* at 18.)

Regarding step two, the ALJ ruled that Mr. Dobbs has the following severe impairments: cervical and lumbosacral disc disease. (*See id.*)  In July 2009, Mr. Dobbs was diagnosed with cervical radiculopathy by the Michael Medical Center Emergency Department. (*See id.* at 274.) Mr. Dobbs presented the examiner with a three-month history of right shoulder pain radiating to his neck. (*See id.*)  The physical examination revealed minimal tenderness on the right side of the neck, reduced range of motion of the right upper extremity, secondary to pain and mild weakness of the ulnar flexors. (*See id.*)  In addition, an x-ray of the cervical spine suggested foraminal narrowing on the right side at C8 of the spine. (*See* R. at 274.)  In August 2009, Mr. Dobbs complained to a medical examiner that for three days he experienced right upper and lower extremity numbness and weakness. (*See id.* at 289.)  Mr. Dobbs's neurological findings included 4/5 right hand grip strength, 3-4/5 right lower extremity strength, decreased sensation in the right upper extremity to pin prick and temperature, and right circumduction gait. (*See id.* at 290, 296.)  Physicians and examiners conducted diagnostic studies to rule out stroke as the cause of such numbness, and found no evidence of a stroke. (*See id.* at. 300, 373-77, 399, 401, 402.)

On September 9, 2009, Dr. Shashi K. Agarwal examined Mr. Dobbs. (*See id.* at 397.) Mr. Dobbs underwent a magnetic resonance imaging test ("MRI") on October 9, 2009 that showed a defect at C5-C6 of the spine, consistent with a large disc herniation, compressing and narrowing of the cervical cord with slight edema, a small central herniation at C3-C4 of the spine, and a straightened and slightly reversed curvature, consistent with muscle spasms. (*See id.* at 403.)  Appointments with other medical examiners on September 16, 2009 and October 9, 2009 confirmed these findings. (*See* R. at 400, 403.)  On April 29, 2010, Dr. Shashi K. Agarwal treated Mr. Dobbs through the surgical procedure of anterior cervical decompression and fusion at C5-6 of the spine for Mr. Dobbs's progressive cervical myelopathy condition. (*See id.* at 420.)

Based upon the evidence described above, the ALJ concluded both the cervical and lumbosacral disc diseases significantly interfered with Mr. Dobbs's ability to lift and carry. (*See id.* at 19.) Thus, Mr. Dobbs's conditions were severe. (*See id.*)

Under the third step, the ALJ found that Mr. Dobbs's impairments did not match one of the listed impairments in 20 C.F.R. part 404, Subpart P Appendix 1. (*See id.*) The ALJ noted that regardless of the listing features that are present, the physical examinations of the upper extremities revealed no muscle weakness, sensory loss, or reflex loss that is both significant and persistent. (*See id.*) The ALJ noted that Mr. Dobbs's lower extremities examinations revealed no persistent sensory or reflex loss. (*See* R. at 19.) The ALJ found that any additional medically determinable impairment was not severe and did not qualify as a component of a listing level impairment under 20 C.F.R. part 404, Subpart P Appendix 1. (*See id.*)

Regarding Mr. Dobbs's RFC, the ALJ found that Mr. Dobbs has the RFC to perform "light" work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (*See id.*) The ALJ noted that Mr. Dobbs can operate foot controls with the right foot occasionally. (*See id.*) In addition to some limitation concerning climbing, the ALJ found that Mr. Dobbs cannot tolerate highly concentrated noise, humidity, wetness, dust, odors, fumes, pulmonary irritants, temperature extremes, vibrations, and cannot be exposed to unprotected heights or dangerous moving machinery. (*See id.*) The ALJ determined the cervical and lumbar disc disease could reasonably be expected to cause some pain, weakness, and lack of coordination in Mr. Dobbs's right arm and leg. (*See id.* at 20.)

Despite the level of pain that could be expected, the ALJ found that Mr. Dobbs's statements regarding the intensity, persistence, and limiting effects of the symptoms from his cervical and lumbar disc impairments are not credible, and they were inconsistent with his RFC

assessment.[1] (*See* R. at 20.) A medical examination in July 2009 revealed Mr. Dobbs's neck, back, and extremities have, "generally not been very abnormal." (*See id.*) In fact, the medical examiner described Mr. Dobbs's neck tenderness as minimal, while the resident examiner found no tenderness and assessed the overall strength of Mr. Dobbs's upper extremities as 5/5. (*See id.* at 20, 274, 275-282.) In Mr. Dobbs's August 2009 examination, the ER physician concluded that any decreased sensation in the right upper extremity was unreliable because Mr. Dobbs had been burned in that area years ago. (*See id.* at 20, 283-320.) Also, Mr. Dobbs brought a cane to his hearing and stated post hearing that he could not walk without a pair of crutches, despite the fact that neither a cane nor crutches had ever been prescribed to him or provided to him upon being discharged from a hospital. (*See id.* at 21, 405-06, 283-320, 373-396.) In fact, Dr. Fernando noted that the crutches used by Mr. Dobbs appeared to be more of an impediment than a walking aid. (*See id.* at 21, 406-407.) In addition, the ALJ found that the pain relievers taken by Mr. Dobbs did not suggest the disc disease caused the level of symptoms Mr. Dobbs claimed. (*See* R. at 21.) The only pain relievers prescribed included Motrin in July 2009 and aspirin on August 24, 2009. (*See id.* at 22, 276, 376.) The ALJ found that the earliest indication in the treatment record of any lower back or lower extremity problem was not until August 2009, despite Mr. Dobbs filing a claim in August 2007. (*See id.* at 20, 289, 374.) The ALJ noted that Mr. Dobb's examination with Dr. Fernando yielded other inconsistencies as well. (*See id.* at 20.)

In April 2010, Dr. Fernando performed a consultative neurological examination on Mr. Dobbs. (*See id.* at 21, 291, 304, 407.) The examination revealed Mr. Dobbs's had 4/5 right lower extremity strength, but Dr. Fernando noted that Mr. Dobbs resisted every command to move his right lower extremity during the exam. (*See id.*) Dr. Fernando recorded that Mr.

---

[1] Mr. Dobbs described maximally intense sharp pain in his right shoulder, lack of control over his right arm and leg, giving way of his right knee, and aching in his left knee from compensating. (*See id.* at 283-320, 373-96.)

Dobbs's upright position straight leg raising reached 90 degrees bilaterally, even though the maximum angles reached on the formal straight leg raising test were lower. (*See* R. at 21, 407.) In fact, the examiner stated, "[t]he examination left something to be desired totally," and "the neurological examination in itself was very nearly a normal examination." (*Id*. at 21, 408.) The ALJ concluded that Mr. Dobbs's resistance during the examination was a function of deliberate magnification of any actual difficulties. (*See id*. at 21.)

With regard to his abilities, Mr. Dobbs testified that he was able to clean up after himself, complete his own meal preparation and laundry, and go grocery shopping with help. (*See id*. at 22, 45-47.) Mr. Dobbs was never diagnosed with chronic breathing problems, and despite complaining of chest pain in 2007, Mr. Dobbs failed to complain of chest pain during the hearing or post hearing consultative examination. (*See id.* at 22, 194.) Based upon Mr. Dobbs's limited mental health treatment, benign mental examination findings, and routinely performed activities, the ALJ determined that Mr. Dobbs's mental impairments do not appear to impact his ability to perform work related activities on a regular basis. (*See id*. at 23.) The ALJ also gave substantial weight to an opinion from Dr. Fernando for purposes of determining Mr. Dobbs's RFC. (*See* R. at 23.)[2]

---

[2] Dr. Fernando noted that Mr. Dobbs:

> could lift and/or carry up to 100 pounds occasionally; lift and/or carry up to 50 pounds frequently; stand and/or walk for a total of six hours in an eight hour workday; sit for a total of eight hours in an eight hour work day; did not require the use of an assistive device to ambulate; could use both upper extremities continuously; could operate foot controls occasionally with right foot and continuously with left foot; could perform postural activities except limits on climbing; could tolerate environmental conditions except for more than moderate noise, continuous humidity, wetness, dust odors, fumes, pulmonary irritants, temperature extremes or vibration, or any unprotected heights, moving mechanical parts or motor operation. (*Id*. at 23, 408-414.)

Dr. Fernando found that Mr. Dobbs is capable of performing "heavy work" with some postural and environment limitations. (*See id*. at 408-414.)

The ALJ found that the evidence in Dr. Fernando's report regarding to Mr. Dobbs's disc disease was consistent with the rest of the record, and there was no reason to doubt that Dr. Fernando was impartial. (*See id.*) However, the ALJ took note of factors that were not considered by Dr. Fernando in his determination that Mr. Dobbs was "capable of heavy work." (*See id.* at 24.) The ALJ took into consideration the surgery performed on Mr. Dobbs after Dr. Fernando's examination. (*See id.*) The ALJ also considered the intermittent findings of sensory deficits in Mr. Dobbs's extremities and the reports of greater muscle weakness than what Dr. Fernando found. (*See id.*) Finally, the ALJ also weighed Mr. Dobbs's musculoskeletal chest pain and abnormal blood tests beginning on or about August 29, 2007. (*See id.*) Based upon this evidence, the medical examinations, Mr. Dobbs's testimony, and the substantial weight afforded to Dr. Fernando, the ALJ determined Mr. Dobbs had an RFC of "light weight." (*See* R. at 24.)

In step four the ALJ determined Mr. Dobbs is unable to perform any of his past relevant work. (*See id.*) Mr. Dobbs used to work as a deliveryman, a janitor, and a roofer. (*See id.*) The ALJ found that these occupations demand medium exertion or more, both as generally performed in the national economy and as actually performed by Mr. Dobbs in the relevant past. *(See id.)* According to the ALJ, these demands exceed the "light weight" RFC established in Mr. Dobbs's case, making him unable to perform any of his past work. (*See id.*)

In the final step, the ALJ found that based upon Mr. Dobbs's age, education, work experience, and RFC, there are a significant number of jobs in the national economy that Mr. Dobbs can perform. (*See id.*) The ALJ determined that Mr. Dobbs's age of 44 years old is considered young according to 20 C.F.R. § 404.1563. (*See* R. at 24.) Mr. Dobbs also has a limited education and is able to communicate in English. (*See id.*) The ALJ explained that Mr. Dobbs still has full use of his left lower extremity and both upper extremities for operating arm-

hand and foot-leg controls. (*See id.*) Relying upon SSR 83-10, the ALJ noted that while there would be a limitation on the operation of foot controls with the right foot in seated positions, relatively few unskilled light jobs are performed in a seated position. (*See id.*) Even more, the ALJ stated Mr. Dobbs does have the ability to occasionally operate foot-leg controls with his right lower, extremity. (*See id.*) Relying upon SSR 83-10 and SSR 85-15, the ALJ also found that restrictions against unprotected elevations and proximity to dangerous moving machinery are not considered significant across all evectional levels. (*See id.*) Finally, in considering Mr. Dobbs's sensitivity to dust and noise, the ALJ explained that according to SSR 85-15, most job environments do not involve great noise or amounts of dust. (*See id.*)

Based upon this five-step analysis, the ALJ found that Mr. Dobbs was not disabled under the Act from August 29, 2007 through the date of the ALJ's decision.

c. *Analysis*

i. Inconsistencies Between Dr. Fernando's Assessment and the Commissioner's Own Assessment.

Mr. Dobbs argues that the Commissioner failed to sustain his burden at step five of the sequential evaluation process. (*See* Pl.'s Br. at 10.) Mr. Dobbs notes that the Commissioner gave Dr. Fernando's report substantial weight; however, Mr. Dobbs claims that the Commissioner excluded the doctor's conclusion that Mr. Dobbs had the RFC to perform "heavy work." (*See id.*) Mr. Dobbs argues that the ALJ's finding is inconsistent with Dr. Fernando's, and no rationalization is provided as to why. (*See id.*) Mr. Dobbs asserts that this discrepancy violates Social Security Ruling 96-8p, which provides that when the ALJ's assessment conflicts with a medical source's opinion, the ALJ must explain why the medical opinion was not adopted. (*See id* (citing SSR 96-8p.)) Mr. Dobbs's argument is without merit.

13

In determining a claimant's RFC, the Commissioner must consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 416.920(e), 416.945. Note, however, that the Commissioner has discretion to weigh all the evidence and resolve material conflicts. *See* 20 C.F.R. § 404.1527. Thus, under SSR 96-8, an RFC must include a resolution of any inconsistencies in the evidence. This requires the Commissioner to explain why a particular opinion was not adopted when his assessment conflicts with a medical source opinion. *See id.* Here, the ALJ did just that.

The ALJ's reason for his conflicting assessment was that he considered factors regarding Mr. Dobbs's disc disease that were not considered by Dr. Fernando. (*See id.* at 23, 24.) First, the ALJ considered the surgery performed on Mr. Dobbs after the opinion was rendered. (*See id.*) Additionally, the ALJ considered the intermittent findings by medical examiners of sensory deficits in Mr. Dobbs's extremities and the reports of greater muscle weakness that were not discovered by Dr. Fernando. (*See id.*) Finally, the ALJ also weighed Mr. Dobbs's musculoskeletal chest pain and abnormal blood tests beginning on or about August 29, 2007. (*See id.*) Thus, Mr. Dobbs's RFC of "light weight" was supported by the totality of the evidence and is justifiably distinct from Dr. Fernando's assessment. (*See id.* at 24.)

      ii.    The Commissioner's Reliance Upon SSR's To Explain Each Non-exertional Limitation's Impact on Mr. Dobbs's Occupational Base

Mr. Dobbs claims the Commissioner erred as a matter of law in applying the medical vocational guidelines. (*See* Pl.'s Br. at 13.) Mr. Dobbs notes that under Third Circuit law, where non-exertional and exertional limitations are at issue, the Commissioner must take or provide vocational evidence from a vocation expert, or other evidence, that includes a statement explaining how the non-exertional limitation affects the claimant's job base. (*See id*; *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 94 (3d Cir. 2007) (citing *Sykes v. Apfel*, F. 3d 261

(3d Cir. 2000).)) Mr. Dobbs argues that no vocational experts testified at the hearing, nor did the ALJ specify or explain how the particular non-exertional limitations affected the claimant's job base.[3] (*See* Pl.'s Br. at 14.) Mr. Dobbs contends that if the Commissioner wishes to rely on an SSR to replace the testimony of a vocational expert, it must be "crystal clear" that the SSR is probative as to the way in which the non-exertional limitation impacted the occupational base, and thus, the ability to work. (*See id.* (citing *Allen v. Barnhart*, 417 F. 3d 396 (3d Cir. 2005).)) Mr. Dobbs claims he was not given a chance to respond to the Commissioner's reliance upon an SSR and asks this Court to remand the case for a determination as to how Mr. Dobbs's exertional and non-exertional limitations erode his job base. (*See* Pl.'s Br. at 14.)

The Third Circuit has held that the Grids (which are used to determine whether the claimant can do any other work in the national economy) may not be used without vocational expert evidence when non-exertion limitations exist. *See Sykes v. Apfel*, 228 F.3d 259, 267 (3d Cir. 2000); Sec. 200.00 Medical Vocational Guidelines. The Third Circuit instructs that a Commissioner may rely on SSR's to satisfy his burden under step five, provided that, "it [is] crystal-clear that the SSR is probative as to the way in which the non-exertional limitations impact the ability to work, and thus, the occupational base." *Allen v. Barnhart*, 417 F.3d 396, 407-08 (3d Cir. 2005). Under SSR 83-11, if the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical vocational rules direct a determination of either disabled or not disabled, dependent upon the claimant's specific

---

[3] Mr. Dobbs comments in his brief that the ALJ, in reaching his decision at step five, ignored his testimony regarding his symptoms in violation of SSR 96-7p. (*See* Pl.'s Br. 12.) Subjective testimony from a claimant cannot by itself be the basis for disability. *See* 20 C.F.R. § 404.1529(a); SSR 96-7. Instead, a claim must demonstrate the existence of an underlying condition, which must be reasonably expected to produce the symptoms alleged, through medical evidence. *See* 20 C.F.R. § 404.1529(b); SSR 96-7p. Here, Mr. Dobbs described maximally intense, sharp pain in his right shoulder, lack of control over his right arm and leg, giving way of his right knee, and aching in his left knee from compensating. (See R. at 283-320, 373-96.) The ALJ, however, reasoned that the medical evidence on the record did not support Mr. Dobbs's testimony. (*See* R. at 20.) Furthermore, the ALJ concluded, based on Dr. Fernando's report, that Mr. Dobbs's deliberately magnified his symptoms. (*See id.* at 21.) Accordingly, Mr. Dobbs's comment is misplaced.

vocational profile. Specifically, SSR 83-10 states that "[e]ven though the weight lifted in a particular light job may be very little, a job falls in the light work category when it requires a good deal of walking or standing." A job is also under the light work category "when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls . . . ." *See* SSR 83-10. Relatively few unskilled light jobs are performed in a seated position. *See id.* SSR 85-15 recognizes that due to an impairment, a person may need to avoid extreme noise, temperature, vibrations, unprotected elevations, dangerous moving machinery, fumes, and dust. However, when a person has such restrictions, the impact of these hazards on the broad world of work is minimal, because most job environments do not involve extreme noise, temperature, vibrations, or dust. *See id.*

Each of the ALJ's selected SSR's are on point and "crystal clear" in demonstrating how Mr. Dobbs's non-exertional limitations would affect his occupational base. For example, the ALJ explained in his analysis that Mr. Dobbs still has full use of his left lower extremity and both upper extremities for operating arm-hand and foot-leg controls. (*See* R. at 19.) The ALJ compared this assessment with SSR 83-10 to determine how the regulations weighed such limitations. (*See id*.) The ALJ noted that while Mr. Dobbs has a limitation on the operation of foot controls with the right foot in seated position, SSR 83-10 clearly explains that relatively few unskilled light jobs are performed in a seated position. (*See id*.) Building off of this assessment, the ALJ expanded Mr. Dobbs's occupational base, stating that Mr. Dobbs does, in fact, have the ability to occasionally operate foot-leg controls with his right lower, extremity. (*See id*.) Accordingly, the ALJ complied with the Third Circuit's requirements in relying on SSRs.

The ALJ also found Mr. Dobbs subject to the non-exertional limitations of highly concentrated noise, humidity, wetness, dust, odors, fumes, pulmonary irritants, temperature

extremes, and vibrations. (*See id*. at 19.) Also, the ALJ determined that Mr. Dobbs cannot be exposed to unprotected heights or dangerous moving machinery. (*See id.*) The ALJ based his determination on SSR 85-15. Regarding the ALJ's first finding concerning Mr. Dobbs's non-exertional limitations, SSR 85-15 states most job environments do not involve great noise or amounts of dust and that such an impact on one's broad world of work would be minimal. (*See id.*) Additionally, regarding the ALJ's conclusion concerning heights and machinery, SSR 85-15 states that "some" limitations on climbing (a limitation for Mr. Dobbs) do not significantly restrict one's broad world of work. (*See id.*)

Based on the ALJ's analysis, the ALJ properly relied on the SSRs in applying the medical vocational guidelines in step five.

## IV. CONCLUSION

For the following reasons, the Commissioner's decision is **AFFIRMED**.

s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc: Parties